IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONNECTION TRAINING SERVICES,** | : | **CIVIL ACTION** |
| a Pennsylvania non-profit corporation | : | |
| | : | |
| v. | : | |
| | : | |
| **THE CITY OF PHILADELPHIA,** | : | |
| **PERRITTI DIVIRGILIO, individually, and** | : | |
| **JAMES FERRARO, individually** | : | NO. 06-3753 |

**MEMORANDUM AND ORDER**

**NORMA L. SHAPIRO, S.J.**                                **FEBRUARY 25, 2009**

      Plaintiff Connection Training Services ("CTS") filed an action against defendants the City of Philadelphia ("City"), Perritti DiVirgilio ("DiVirgilio") and James Ferraro ("Ferraro"), director and deputy director, respectively, of the City Labor Standards Unit. Count I of the CTS amended complaint alleged violations of 42 U.S.C. § 1983 by the City. Count II alleged violations of 42 U.S.C. § 1983 by DiVirgilio and Ferraro. Count III alleges violations by defendants DiVirgilio and Ferraro of the Pennsylvania Public Official and Employee Ethics Act, 65 Pa. C.S.A. § 1101, *et seq*. Plaintiff's motion for reconsideration of the court's grant of summary judgment on counts I and II will be denied. The court will also deny defendants' motion that the court exercise supplemental jurisdiction and will dismiss count III of plaintiff's complaint without prejudice.

**I.    MOTION FOR RECONSIDERATION**

      The court's memorandum and order of December 31, 2008, (paper no. 61) ("Opinion") granted summary judgment against CTS for violations of its rights to due process and equal

protection under the Fourteenth Amendment of the U.S. Constitution.[1]  Before the court is the timely motion for reconsideration of the denial of the due process claim.

Reconsideration serves to correct manifest errors of law or fact.  Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3rd Cir. 1985).  A court should grant a motion for reconsideration only if there is:  1) newly available evidence; 2) an intervening change in controlling law; or 3) a need to correct a clear error of fact or to prevent manifest injustice.  Haymond v. Lundy, 205 F. Supp. 2d 390, 395 (E.D. Pa. 2002).  "Motions for reconsideration are not to be used to reargue or relitigate matters already decided."  Id.  CTS asserts a clear error of material fact.

The Opinion held the due process claim insufficient because the property right alleged to have been violated depended on precluding the defendants from denying Philadelphia Code § 17-107(2)(b)(.2) ("(2)(b)(.2)" or "the trainee provision") became effective.[2]  The trainee provision was added to Philadelphia Code Chapter 17-100 together with some other provisions by Ordinance No. 990221-A, passed on September 28, 1999.  Ordinance No. 990221-A stated that the provisions it created were not to become effective until the Minority Business Enterprise Council ("MBEC") certified a minimum minority participation in union apprenticeship programs[3]; MBEC never issued that certification.[4]  CTS claimed the defendants acted as if the

---

[1] This memorandum incorporates the factual background contained in the Opinion.

[2] (Opinion, pp. 11-12.)  To estop a government agency in Pennsylvania, a plaintiff must establish: (1) the agency intentionally or negligently misrepresented some material fact; (2) the agency had knowledge or reason to know that the other party would rely on it; and (3) the agency induced the other party to act to its detriment because of justifiable reliance upon the misrepresentation.  See Strunk v. Zoning Hearing Bd. of Upper Milford Tp., 684 A.2d 682, 685 (Pa.Cmwlth. 1996).

[3] See e.g. (2)(b)(.2), n.23.1 (pointing to Philadelphia Code § 17-107, n. 22,, which details what exactly MBEC was to certify).

[4] MBEC was dissolved by order of Mayor Nutter on October 1, 2008.

trainee provision were in effect,[5] and that defendants should have known that CTS might have relied on their negligent misrepresentation that the trainee provision was in effect. (Opinion, p. 12.) CTS did not present evidence that: it created its training program in reliance on the City's misrepresentation; such reliance was justifiable; and its reasonable reliance was detrimental to CTS. Id.

CTS, in its motion for reconsideration, claims that it created training programs in reliance on (2)(b)(.2) being in effect. According to CTS, Garnett Littlepage, in his deposition, stated:

- in 2004 he investigated and read § 17-107 by going to the City's website and reading a document that did not include any footnotes ([Littlepage Deposition] at 105);
- based upon the trainee exemption in § 17-107, CTS conceived a training program in conjunction with the Philadelphia Workforce Development Corporation (PWDC) that would . . .train ex-offenders as trainees and pay these trainees a wage of $15.89 an hour (Id. at 105-06);
- developed a curriculum and submitted it to PWDC, a City Related Agency, which approved the program and funded the first cycle of the program (see eg. Id. at 82-83);
- CTS subsequently trained the employees.

(Pl.'s Mot. for Reconsideration, pp. 4-5.) CTS asserts there are remaining questions of material fact whether its reliance was genuine, justified, and detrimental, so its due process claim should have survived summary judgment.

Assuming that CTS can show a negligent misrepresentation by defendants, that the defendants should have known CTS would rely on their misrepresentation,[6] and that reliance was

---

[5]Defendants acted as if other provisions, requiring the same MBEC certification as the trainee provision, were in effect.

[6]Defendants argue that CTS was not an intended beneficiary of the trainee provision because LP Group[2] ("LP2") employed CTS' trainees. (Def.'s Memorandum of Law in Opposition to Pl.'s Mot. for Reconsideration, p.7) (2)(b)(.2) states:
> A bonafide member of a job training program may be paid less than the prevailing wage if said training program's purpose is to provide construction training opportunities and

3

justifiable,[7] CTS has not produced evidence that its reliance caused it detriment. Strunk v. Zoning Hearing Bd. of Upper Milford Tp., 684 A.2d 682, 685 (Pa.Cmwlth. 1996). The detriment alleged in an estoppel claim must be actual and quantifiable, and not merely presumptive. See Card v. Commonwealth, Pennsylvania School Employes' Retirement Bd., 478 A.2d 510, 514 (Pa. Cmwlth.1984) (denying an estoppel claim where the alleged damages stemmed from a refusal to allow plaintiff to apply for pension credits).[8]

CTS submitted a grant proposal to the PWDC and other agencies for funding to train ex-offenders as construction workers. The grant process required CTS to name an employer committed to hiring CTS trainees on construction projects at below prevailing wage for the

---

that the said training program has been has been approved by the City, a City Agency, or City-related Agency, and provided that the size of the construction project does not exceed 8 housing units.

CTS trainees arguably remain "bona fide members" of CTS even after they work for LP2 during the practical part of their training. Defendants do not dispute that CTS was City approved and that its programs were to provide construction training opportunities. Had the trainee provision been in effect, CTS and LP2 could claim a right to employ CTS trainees at less than prevailing wage on construction projects involving eight or fewer housing units.

[7]Garnett Littlepage claims that the version of (2)(b)(.2) he saw on the City's website in 2004 lacked the footnote stating that the provision was not in effect absent MBEC certification. (Deposition of Garnett Littlepage, p. 105.) In reconsidering a grant of defendants' motion for summary judgment, all evidence is viewed in the light most favorable to the non-moving party. See P.N. v. Clementon Board of Educ., 442 F.3d 848, 852 (3d Cir. 2006). The court assumes Littlepage's memory is correct that the footnote was absent from the City's website, not that Littlepage failed to notice the footnote.

The City Code speaks for itself and ignorance of the law is normally no excuse. However, it remains unclear whether CTS could have considered the City's website an authoritative source for the law. The American Legal Co. ("AmLegal") is the official publisher of the Philadelphia City Code. AmLegal maintains both print and on-line versions; the online version is at http://www.amlegal.com/library/pa/philadelphia.shtml (last visited on February 11, 2009). The City's website (http://www.phila.gov) has a link directly to AmLegal. It remains unresolved whether the website Littlepage saw in 2004 was AmLegal's.

[8]The only damage normally recoverable for misrepresentation in general, whether fraudulent or negligent, is "pecuniary." See Restatement (Second) of Torts §§ 549, 552B.

4

hands-on second half of the training cycle. LP Group[2] ("LP2"), a for-profit construction firm of whom Littlepage was a minority owner, was listed in the first CTS grant proposal. (Deposition of Douglas Kissel, pp. 52-53.)

CTS was not harmed as a result of expending time, effort, and money in designing and submitting that grant proposal, because the grant was approved and paid in full. Id. at 51. CTS does not allege that any grantor actually withheld funds it was legally obligated to provide CTS as a result of defendants' actions. When the City refused to honor LP2's construction contracts for failure to pay the prevailing wage,[9] CTS chose not to proceed with subsequent training cycles rather than seek other employers who might commit to hiring CTS trainees. (Littlepage Deposition, pp. 146, 174-75.)

CTS has not averred that the City withdrew or withheld any funding to CTS that it had promised. CTS asserts it has not received $500,000 in grant funds that it was likely to receive had it been able to place its trainees in City construction projects where LP2 could pay them less than prevailing wage. (Opinion, pp. 2-3.) This injury is speculative;[10] even had the City paid LP2's contracts, and LP2 had committed to subsequent training cycles, the City was not obligated to fund more than one cycle.

---

[9] LP2 arguably relied on the City's alleged misrepresentations that the trainee provision was in effect more than CTS did. LP2's reliance was to its detriment; it signed construction contracts with the City assuming it could pay CTS trainees below the prevailing wage and suffered injury when the City refused to honor those contracts, but LP2 is not a plaintiff in this action.

[10] CTS standing to sue is not affected by non-reliance on defendants' misrepresentation to its actual detriment. An alleged injury must be "fairly traceable" to a defendant's conduct for Article III standing, but that does not mean the plaintiff must prove causation sufficient to sustain a tort claim. Interfaith Community Organization v. Honeywell Intern., Inc., 399 F.3d 248, 257 (3rd Cir. 2005).

Estoppel fails absent a showing of detrimental reliance. CTS may have justifiably relied on the City's negligent misrepresentation that the trainee provision was in effect, but it has not produced evidence that its reliance led to any detriment to CTS. The motion for reconsideration will be denied.

## II.     COUNT III

Count III alleges violations of the Pennsylvania Public Official and Employee Ethics Act ("POEEA"), 65 Pa. C.S.A. § 1101, et seq. by defendants DiVirgilio and Ferraro, in their individual capacities.[11] Having decided all federal claims against CTS, the court may exercise supplemental jurisdiction over count III pursuant to 28 U.S.C. § 1367 or dismiss without prejudice. CTS and Defendants DiVirgilio and Ferraro move for the court to exercise supplemental jurisdiction and decide count III. DiVirgilio and Ferraro claim no relief is available to private litigants under the POEEA. CTS asserts the POEEA permits an implied private cause of action.

Supplemental jurisdiction over count III is undisputed; count III is clearly "so related" to counts I and II that it forms "part of the same case or controversy." 28 U.S.C. § 1367(a). The court may decline to exercise jurisdiction over supplemental state claims when "the claim raises a novel or complex issue of State law," or "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1,3).

The POEEA provides no express private cause of action against Pennsylvania public officials for damages resulting from official corruption or ethical violations. Section 8 of the POEEA, 65 Pa. C.S.A. § 1108, states that the State Ethics Commission has jurisdiction to hear

---

[11]The court severed and stayed count III in its August 7, 2007 order (paper no. 34).

6

complaints against public officials in Pennsylvania; the Commission then initiates its own investigation into whether criminal charges should be brought against the allegedly corrupt official. The POEEA does not provide any other procedure for holding public officials civilly or criminally liable.

A statute may permit an implied cause of action under Pennsylvania law if: 1) the plaintiff is "one of the class for whose especial benefit the statute was enacted;" 2) there is clear legislative intent to create a private remedy; and 3) such a private remedy would be consistent with the underlying purposes of the legislative scheme. See Estate of Witthoeft v. Kiskaddon, 733 A.2d 623, 626 (Pa. 1999) (adopting part of the analytical framework established by Cort v. Ash, 422 U.S. 66, 78 (1975) for determining whether a statute permits implying a private cause of action). Witthoeft held that the Pennsylvania Motor Vehicle Code did not permit an an implied private cause of action by an automobile accident victim against the physician who failed to notify the state Department of Transportation of a driver's impaired eyesight. Id., 733 A.2d at 626-27.

The Pennsylvania Supreme Court, applying Witthoeft, found an implied private cause of action under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. § 1701 et seq., actionable against an insurer who refused to pay statutorily-mandated interest. Schappel v. Motorists Mut. Ins. Co., 934 A.2d 1184, 1190 (Pa. 2007); see 75 Pa. C.S. § 1716. However, the Superior Court held that a medical provider does not have an implied cause of action under the Pennsylvania Quality Health Care Accountability and Protection Act, 40 P.S. §§ 991.2101 et seq., against an insurer who refused to honor a claim for payment. Solomon v. U.S. Healthcare Systems of Pennsylvania, Inc., 797 A.2d 346, 352-53 (Pa. Super. 2002); see 40 P.S. § 991.2102.

No Pennsylvania court since Wtthoeft was decided whether the POEEA permits a private cause of action against public officials for its violation.  The Pennsylvania Supreme Court recently held that the POEEA's requirement that all complaints of corruption and ethics violations by public officials and employees be filed with the State Ethics Commission does not preempt a "qualified private party" from objecting to a Statement of Financial Interest ("SFI"), which the Election Code, 65 Pa.C.S. § 1105(b)(5) requires a candidate for public office to file. In re DeYoung, 903 A.2d 1164 (Pa.. 2006).  The court in DeYoung based its holding on four considerations:  1) the POEEA does not grant the State Ethics Commission authority to remove a candidate from a ballot, but the Election Code allows private citizens to petition to remove a candidate from a ballot, 25 P.S. § 2937 ("§ 2937"); 2) candidates for local and county offices frequently do not forward their SFI to the State Ethics Commission; 3) review of many SFIs would be impractical if not impossible in the time available; and 4) the POEEA does not trump the private cause of action for ballot removal under § 2937.  DeYoung, 903 A.2d at 1168-70. The Pennsylvania Supreme Court did not determine whether the POEEA itself provides an implied private cause of action.  The only issue in DeYoung was whether the Election Code's pre-existing private cause of action to remove a candidate from the ballot was valid after passage of the POEEA.

Before the Pennsylvania Supreme Court decided Witthoeft, the Commonwealth Court had denied there was an implied private cause of action under the POEEA Sheers v. Higgins, 549 A.2d 614, 616 (Pa. Commw. Ct. 1988).  Whether the Pennsylvania Supreme Court will overturn Sheers using the Witthoeft analytical framework presents a novel issue of state law that should be decided by the Pennsylvania Supreme Court.  The court will decline to exercise

8

supplemental jurisdiction over count III, under 28 U.S.C. § 1367(c); count III will be dismissed.

## IV.     CONCLUSION

CTS has not shown that it relied on defendants' alleged misrepresentations to its detriment.  CTS has not shown that defendants violated its due process rights under the Fourteenth Amendment.  Its motion for reconsideration of the Court's Opinion of December 31, 2008, will be denied.  Count III of CTS' complaint, under the Pennsylvania Public Official and Employee Ethics Act, 65 Pa. C.S.A. § 1101, et seq., presents a novel issue of state law.  The court will decline to exercise supplemental jurisdiction and will dismiss count III without prejudice.  The motion by defendants DiVirgilio and Ferraro to dismiss Count III will be denied as moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONNECTION TRAINING SERVICES,** : | | **CIVIL ACTION** |
| a Pennsylvania non-profit corporation : | | |
| : | | |
| **v.** : | | |
| : | | |
| **THE CITY OF PHILADELPHIA,** : | | |
| **PERRITTI DIVIRGILIO, individually, and** : | | |
| **JAMES FERRARO, individually** : | | **NO. 06-3753** |

**ORDER**

    **AND NOW**, this 25th day of February, 2009, upon consideration of plaintiff's motion for consideration and defendants' response, as well as the parties' briefs on whether the court should exercise supplemental jurisdiction over plaintiff's count III, it is **ORDERED:**

    1. Plaintiff's motion for reconsideration (paper no. 44) is **DENIED**.

    2. The court declines to exercise jurisdiction over count III of plaintiff's complaint, under the Pennsylvania Public Official and Employee Ethics Act, 65 P.S.A. § 1101 *et seq*. See 28 U.S.C. § 1367(c)(3). Count III of plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.

    3. Defendants DiVirgilio and Ferarro's motion to dismiss count III for failure to state a claim upon which relief can be granted is **DENIED AS MOOT**.

                                           /s/ Norma L. Shapiro
                                                                    J.